Robert BIGGERSTAFF, individually and on behalf of all others similarly situated, Plaintiff,

v.

VOICE POWER TELECOMMUNICATIONS, INC., Defendant.

No. Civ.A.2:02–1524–18.

United States District Court, D. South Carolina, Charleston Division.

Sept. 13, 2002.

Joseph C. Wilson, IV, Charleston, SC, for Plaintiff.

Steven W. Hamm, Columbia, SC, C. JoAnne Wessinger, Columbia, SC, for Defendant.

## ORDER

NORTON, District Judge.

This matter is before the court on plaintiff's motion to remand pursuant to 28 U.S.C. § 1447(c).

## I. Background

In 1991, Congress amended the Communications Act of 1934, 47 U.S.C. §§ 151–614, with the enactment of the Telephone Consumer Protection Act of 1991 ("TCPA"), Pub.L. No. 102–243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). "The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ( [f]ax) machines and automatic dialers.'" *Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir.1997) (quoting S.Rep. No.

102–178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N.1968).

The TCPA provides in relevant part that it shall be unlawful for any person "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission. . . ." 47 U.S.C. § 227(b)(1)(B). In addition, the Federal Communications Commission ("FCC") has issued the following implementing regulation pursuant to the TCPA:

> All artificial or prerecorded telephone messages delivered by an automatic telephone dialing system shall:
>
> (1) At the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and
>
> (2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player which placed the call) or address of such business, other entity, or individual.

47 C.F.R. 64.1200(d).

Plaintiff brings this putative class action against Voice Power Telecommunications ("VPT") on behalf of the following proposed class:

> all persons who own a South Carolina residential phone line and received a telephone call from a Defendant using an artificial or prerecorded voice to deliver an unsolicited advertisement without the prior express consent of the called party.

(Compl.¶ 4.) Plaintiff alleges that VPT willfully and knowingly violated § 227(b)(1)(B) and 47 C.F.R. 64.1200(d) and is seeking monetary damages and injunctive relief.

## II. Law/Analysis

### A. Federal Question Jurisdiction

Plaintiff argues that this action should be remanded because this court does not have subject matter jurisdiction under the TCPA. The TCPA includes the following private cause of action:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring *in an appropriate court of that State* —
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3) (emphasis added). In *Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir.1997), the Fourth Circuit held that state courts have exclusive jurisdiction over private causes of action brought pursuant to 47 U.S.C. § 227(b)(3). First, the court held that "when Congress provided in § 227(b)(3) of the TCPA that private civil actions 'may' be brought in the appropriate courts of the states, it did not intend to confer concurrent jurisdiction on the United States district courts." *Inacom*, 106 F.3d at 1153. Second, the court held that a plaintiff may not bring a TCPA claim pursuant to 28 U.S.C. § 1331, the general "federal question" subject matter

jurisdiction statute. *Id.* at 1153–55. Although § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," the court explained that "§ 1331 is a general federal-question statute, which gives the district courts original jurisdiction unless a specific statute assigns jurisdiction elsewhere." *Id.* at 1154. By enacting § 227(b)(3), Congress manifested a "specific intent that private TCPA actions should be brought in the state courts." *Id.* at 1155. This "particularized congressional intent ... governs, not the general proposition announced in § 1331." *Id.* Third, the court held that the TCPA did not violate the Equal Protection Clause or the Tenth Amendment. *Id.* at 1156–58. Thus, under *Inacom,* this court does not have federal question subject matter jurisdiction over plaintiff's private civil action pursuant to § 227(b).[1]

Defendant attempts to distinguish *Inacom* on several different grounds. First, defendant argues that this court has jurisdiction under 47 U.S.C. § 227(f)(2), which provides that federal district courts "shall have exclusive jurisdiction over all civil actions brought under this subsection." The referenced "subsection" is § 227(f), entitled "Authority of States," which authorizes state attorneys general to bring civil actions on behalf of their states' residents to obtain an injunction against such calls and to recover monetary damages. 47 U.S.C. § 227(f)(1). Thus, the TCPA grants federal courts exclusive jurisdiction over actions brought by the state attorneys general, but places exclusive jurisdiction over private civil actions in state courts. *See Inacom,* 106 F.3d at 1152

("We find it significant that in enacting the TCPA, Congress wrote precisely, making jurisdictional distinctions in the very same section of the Act by providing that private actions may be brought in appropriate state courts and that actions by the states must be brought in the federal courts.") This argument is specious at best.

Second, defendant argues that § 227(b)(3) does not apply because South Carolina law does not permit plaintiff to bring his claims as a private cause of action. Section 227(b)(3) provides that "[a] person or entity may, *if otherwise permitted by the laws or rules of court of a State,* bring [an action] in an appropriate court of that State." (emphasis added). Defendant argues that this clause should be interpreted as requiring states to enact enabling legislation or case law before a private TCPA cause of action may be brought in state court. However, the *Inacom* court addressed this specific clause and held that it "does not condition the substantive right to be free from [prohibited telemarketing practices] on state approval." *Inacom,* 106 F.3d at 1156. "Rather, the clause recognizes that states may refuse to exercise the jurisdiction authorized by the statute. Thus, a state could decide to prevent its courts from hearing private actions to enforce the TCPA's substantive rights." *Id.* In other words, the statutory scheme allows states to opt-out of private causes of action under the TCPA, but it does not require that they opt-in. The *Inacom* court recognized that under this scheme, a private cause of action may be available in some states but not in others, but noted that the "substantive right is enforceable by state attorneys general or the Federal Communications Commission irrespective

---

**1.** An inconsequential difference between *Inacom* and this case is that the plaintiff in *Inacom* claimed that the defendant violated the TCPA by sending unwanted faxes, whereas in this case the defendant allegedly sent

unwanted pre-recorded telephone messages. The TCPA prohibits several activities, including sending unwanted faxes, § 227(b)(1)(C), and unwanted prerecorded telephone calls, § 227(b)(1)(B).

of the availability of a private action in state court." *Id.* Thus, even if a private cause of action under the TCPA is not available in a particular state, it does not follow that the federal court in that state has jurisdiction to hear the claim. Accordingly, even if South Carolina law explicitly provided that there was no private cause of action in South Carolina to enforce the TCPA, this court still would not have federal question subject matter jurisdiction under § 227(b)(3).[2]

Defendant also argues that this court has federal question subject matter jurisdiction because it has raised constitutional defenses to plaintiff's claims. Under the "well-pleaded complaint" rule, 28 U.S.C. § 1331 provides subject matter jurisdiction over only those cases in which the complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Inacom,* 106 F.3d at 1154; *see also Ormet Corp. v. Ohio Power Co.,* 98 F.3d 799, 806 (4th Cir.1996). In the "vast majority" of cases where federal question jurisdiction exists, federal law creates the plaintiff's right of action. *Inacom,* 106 F.3d at 1154. As explained above, even though plaintiff's cause of action is created by federal law, Congress has taken the unusual step of placing jurisdiction over a federally created cause of action in state court. *Id.* at 1154–55. And it is well-settled that a defendant may not cause jurisdiction to lie in federal court simply by raising a constitutional defense to plaintiff's claims. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 9–11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). There-

fore, this court does not have jurisdiction based on defendant's constitutional defenses.

Finally, defendant argues that the *Inacom* decision has been cast into doubt by the Supreme Court's decision in *Verizon Md., Inc. v. Public Service Com'n of Md.,* —— U.S. ——, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). At issue in *Verizon Md.* was 47 U.S.C. § 252(e)(6), which provides in relevant part:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

The Fourth Circuit held that § 252(e)(6) granted the federal courts jurisdiction to review only certain determinations of the state commissions and therefore could not be the basis for general federal question subject matter jurisdiction under § 1331. *Bell Atlantic Md., Inc. v. MCI Worldcom, Inc.,* 240 F.3d 279, 307 (2001). The Fourth Circuit employed a similar analysis in *Verizon Md.* as it did in *Inacom,* holding that § 252(e)(6) was a specific jurisdictional grant that trumped the general federal question jurisdictional grant of § 1331. *See Bell Atlantic Md., Inc.,* 240 F.3d at 307 (citing *Inacom,* 106 F.3d at 1154). However, the Supreme Court vacated the Fourth Circuit's decision, explaining that § 252(e)(6) was a jurisdiction-granting statute that did not limit federal question subject matter jurisdiction under § 1331. *Verizon Md.,* 122 S.Ct. at 1758–59. The Court explained that "[t]he mere fact that

---

2. Defendant contends that sections 16–17–445 and –46 of the South Carolina Code prohibit a private cause of action under the TCPA. Although this court need not address this issue for the reasons explained above, it does not appear that these statutory provisions—which make certain telemarketing practices illegal under state law and authorize the S.C. Department of Consumer Affairs to impose civil fines for such violations—prohibit a cause of action under the TCPA in South Carolina courts.

some acts are made reviewable should not suffice to support an implication of exclusion as to others." —— U.S. at ——, 122 S.Ct. at 1759 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

The *Verizon Md.* case is distinguishable from this case because it involved a different statute and a different issue. Section 252(3)(6) differs substantially from § 227(b)(3). Section 252(e)(6) does not grant jurisdiction to state courts; rather it grants subject matter jurisdiction over certain actions to federal courts. Conversely, § 227(b)(3) does not grant jurisdiction to federal court; rather, it grants jurisdiction over certain actions to state court. Accordingly, the issue in *Verizon Md.* was whether a grant of federal jurisdiction over certain claims precluded federal subject matter jurisdiction under § 1331. *See* —— U.S. at ——, 122 S.Ct. at 1759. The Supreme Court held that by granting federal jurisdiction over certain actions, § 252(3)(6) did not preclude federal jurisdiction under § 1331. *Id.* The issue in *Inacom* was whether the grant of jurisdiction to state court in § 227(b)(3) precluded federal court jurisdiction under § 1331. Thus, the Court's reasoning in *Verizon Md.* is inapposite and does not undermine the Fourth Circuit's holding in *Inacom.*[3]

## B. Diversity Jurisdiction

■ Defendant argues that even if this court does not have federal question subject matter jurisdiction, it has diversity jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The Fourth Circuit in *Inacom* did not specifically address how § 227(b)(3) interacted with 28 U.S.C. § 1332, the diversity jurisdiction statute. Plaintiff, however, argues that the reasoning in *Inacom* suggests

that § 1332 should yield to § 227(b)(3). As explained above, the court in *Inacom* held that § 1331 "is a general federal-question statute, which gives the district courts original jurisdiction unless a specific statute assigns jurisdiction elsewhere." *Inacom*, 106 F.3d at 1154. In addition, the court noted that 28 U.S.C. § 1337(a), which provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce," was a general jurisdictional grant that must likewise yield to the specific jurisdictional provision in § 227(b)(3). 106 F.3d at 1155 n. 3. Unlike §§ 1331 and 1337, however, the diversity jurisdiction grant in § 1332 is not a "general federal question statute." Rather than granting jurisdiction on the basis of federal law, § 1332 is an independent grant of jurisdiction designed to prevent discrimination against out-of-state defendants regardless of whether federal law is involved. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Diversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination in state courts against those not citizens of the state.") The *Inacom* court explained that although federal courts have jurisdiction over the vast majority of claims arising under federal law, state courts generally have concurrent jurisdiction over claims arising under federal law, and therefore it is possible for Congress to place jurisdiction over certain types of claims arising under federal law exclusively in state courts. *See* 106 F.3d at 1154–55. However, the *Inacom* case did not cite any examples of specific jurisdictional grants to state courts that precluded diversity jurisdiction. On the contrary, the *Inacom* court cited *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900), as an exam-

---

**3.** There is no federal question under 47 U.S.C. §§ 206 and 207 because Plaintiff amended his Complaint to delete his request for attorneys' fees pursuant to § 206.

ple where "Congress intended that ... cases be litigated in state courts *unless there was diversity of citizenship.*" 106 F.3d at 1154–55 (emphasis added). The *Inacom* court then explained that "[w]e have similarly concluded that Congress intended that private TCPA cases be litigated in state courts, if the state consents." *Id.* Therefore, the *Inacom* court's rationale that the general federal question jurisdictional grants in §§ 1331 and 1337 are subject to certain specific exceptions does not necessarily apply to the diversity jurisdiction statute, which derives its basis not on the presence of a federal question, but rather on an independent anti-discrimination rationale.

The only case this court is aware of addressing this issue is *Kinder v. Citibank*, 2000 WL 1409762, 2000 U.S.Dist. LEXIS 13853, at *9–10 (S.D.Cal.2000), an unpublished decision in which the court held that § 227(b)(3) does not override the diversity jurisdiction statute.

The court reasoned that:

[I]n those actions where diversity of citizenship properly exists, Plaintiff's interpretation of the TCPA would create the anomalous result that state law claims based on unlawful telephone calls could be brought in federal court, while federal TCPA claims based on those same calls could be heard only in state court. Such an interpretation would also undermine the purposes of supplemental jurisdiction by requiring parties who bring TCPA claims along with other federal claims to maintain separate, parallel actions in state and federal court.

*Kinder*, 2000 WL 1409762, 2000 U.S.Dist. LEXIS 13853, at *9–10. In this case, plaintiff did not plead any state law claims, so the issues of supplemental jurisdiction and claim splitting are not directly at issue. Nonetheless, the *Kinder* court's reasoning is somewhat illuminating on the issue of § 227(b)(3) vis a vis § 1331.

Regarding congressional intent, although the *Inacom* decision makes clear that Congress intended for TCPA suits to be brought in state court, neither the *Inacom* opinion nor the TCPA's legislative history provides any guidance as to whether Congress intended for § 227(b)(3) to trump diversity jurisdiction if the requirements of § 1332 are met. As a practical matter, Congress likely did not contemplate a potential conflict between § 227(b)(3) and § 1332 because the statutory damages were set at $500, well below the $75,000 amount in controversy. Thus, it is not evident that Congress wanted the claims to be brought in state court even if they exceeded $75,000 and involved diverse parties. Accordingly, although the congressional intent favors remanding TCPA cases to state court, it does not definitively answer the question whether federal jurisdiction is present for a TCPA claim if the requirements of § 1331 are met.

In any event, the court need not decide this thorny legal issue because this court does not have diversity jurisdiction under § 1332. It is not disputed that there is complete diversity among the parties. At issue is the $75,000 jurisdictional minimum. It is well-settled that in determining the amount in controversy in a class action, claims for monetary relief are divided on a pro rata basis if the class members are asserting "separate and distinct claims" rather than a "common and undivided interest." *Zahn v. Int'l. Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (internal citation omitted). Here, each putative class member is asserting separate and distinct monetary claim for $500. Thus, even if a class action were certified, plaintiffs' pro rata claims for monetary relief would not meet the $75,000 jurisdictional minimum.

Defendant, however, argues that the amount in controversy is met because of

plaintiff's request for injunctive relief. Plaintiff's request for injunctive relief is "for a permanent injunction barring Defendant from further violations, either directly or through its agents, of any state or federal law or regulation governing the use of prescribed telephone messages to residential lines." (Compl. at 28.) This court has held that in a class action where the plaintiffs are asserting separate and distinct claims rather than a common and undivided interest, the cost of injunctive relief, like claims for monetary relief, should be divided on a pro rata basis among class members. *See Spann v. Style Crest Products, Inc.*, 171 F.Supp.2d 605, 610–1 (D.S.C.2001) (citing *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 960 (9th Cir.2001)). Therefore, unless defendant can show that the cost of the requested injunctive relief would exceed $75,000 per plaintiff, the amount in controversy is not met. *Spann*, 171 F.Supp.2d at 610–11.

In this case, defendant has not presented any explanation, let alone any evidence, showing that enjoining it from using prerecorded telephone messages to residential lines would cost more than $75,000, much less more than $75,000 per plaintiff. In *McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481,

493 (S.D.W.Va.2001), the case cited by defendant in its brief, the defendant submitted sworn affidavits from its corporate officers explaining how compliance with the requested injunctive relief would impose certain costs on the defendant by forcing changes in its business practices. Defendant has presented no such evidence in this case. Thus, this court does not have diversity jurisdiction because defendant has failed to show[4] that the amount in controversy has been met.[5]

## C. Request for Attorney's Fees

Plaintiff has requested attorneys' fees for the costs of filing this motion because he argues that the result was dictated by *Inacom.* A court may award costs of removal, including attorneys' fees, if the "removal petition was so patently without merit that the 'inescapable conclusion' is that it was filed in bad faith." *ITT Indus. Credit Co. v. Durango Crushers, Inc.*, 832 F.2d 307, 308 (4th Cir.1987). As explained above, the issue of diversity jurisdiction over a TCPA claim was not addressed by *Inacom* and is a genuine, and rather complex, jurisdictional issue. Thus, defendant's removal was not in bad faith and plaintiff is not entitled to attorneys' fees or costs.[6]

---

4. As this court explained in *Spann,* there is a split of authority on the appropriate burden of proof on a motion to remand. 171 F.Supp.2d at 610 (noting that the various burdens include "legal certainty," "preponderance of the evidence," and "reasonable probability"); *see also McCoy,* 147 F.Supp.2d at 486–88 (noting split of authority). Defendant has failed to show under any standard that the injunctive relief would cost it more than $75,000.

5. The United States Supreme Court has granted a writ of certiorari in the *In re Ford Motor Co./Citibank* case on the issue "[w]hether the cost to the defendant of complying with an injunction sought by a plaintiffs' class may satisfy the amount-in-controversy requirements of the diversity jurisdiction statute,

where such compliance would cost the defendant more than the $75,000 jurisdictional amount whether it covered the entire class or any single member of the class." 534 U.S. 1126, 122 S.Ct. 1063, 151 L.Ed.2d 966; *see also* Amicus Brief of the United States, 2002 WL 939555. This case is set for oral argument this fall. Yet regardless of how the Court rules on this issue, defendant has failed to show that the amount in controversy has been met in this case because it has not shown that its total cost of complying with the injunction would exceed $75,000.

6. The court need not address plaintiff's argument that the Notice of Removal was untimely because the action is remanded on the other grounds.

## III. Conclusion

It is therefore,

**ORDERED,** for the reasons articulated above, that plaintiff's motion to remand be **GRANTED.**

**AND IT IS SO ORDERED.**