**James M. WATSON Plaintiff,**

v.

**NCO GROUP, INC., et. al. Defendants.**

**No. CIVA 2:06CV1502.**

United States District Court,
E.D. Pennsylvania.

Oct. 3, 2006.

Order Denying Reconsideration
Nov. 28, 2006.

Joseph A. Mullaney, III, Law Office of Dimitrios Kolovos, LLC, Voorhees, NJ, Cary L. Flitter, Lundy, Flitter, Beldecos & Berger, P.C., Narbert, PA, for Plaintiff.

David Israel, Sessions, Fishman & Nathan, L.L.P., Metairie, LA, Kenneth Cleburne Grace, Sessions, Fishman & Nathan, LLP, Tampa, FL, Joan P. Depfer, Marshall Dennehey Warner Coleman & Goggin, Philadelphia, PA, for Defendants.

## ORDER

DAVIS, District Judge.

AND NOW, this 3rd day of October, 2006 upon consideration of Defendants' Motion to Dismiss (Doc. No. 7) Counts Two and Three of Plaintiff's Complaint, it is hereby ORDERED the Defendants' motion is GRANTED with respect to Count Two, and DENIED with respect to Count Three for the reasons set forth below.

Plaintiff alleges that in August of 2005, after initiating telephone service in a new residence, he began receiving repeated prerecorded or mechanical telephone calls from a debt service to which he owed no debt. He alleges that he received more than 200 calls in a five month period and that he spent in excess of 53 hours speaking with approximately 29 of Defendants' agents in an attempt to correct the problem. His attempts failed and he brings various claims before the Court including violation of the Communications Act of 1934, 47 U.S.C. § 223 (Count Two)[1], and violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count Three).

## I. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will be granted when the moving party demonstrates that the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing such a motion, the court will accept all allegations in the complaint as true and will draw all reasonable inferences in the light most favorably to the non-moving party. Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir.1989).

## II. Telephone Consumer Protection Act

The TCPA, in relevant part, makes it "unlawful to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications Commission] ("FCC") under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B). The TCPA provides that the FCC may exempt from coverage (i) calls that are not made for commercial purposes and (ii) calls made for commercial purpose where the FCC determines

1. Plaintiff concedes that the Communications Act of 1934 is a criminal statute and agrees to the dismissal of Count Two.

that the call (I) will not adversely affect the privacy rights intended to be protected by the TCPA and (II) does not include the transmission of any unsolicited advertisement. 47 U.S.C. § 227(b)(2)(B).

■ The FCC exercised it authority to create exemptions with the issuance of its October 16, 1992 Report and Order. 7 FCC Rcd. 8752 (1992). Therein, the FCC created an express exemption for calls made to a party with whom the caller has an established business relationship. *Id.;* 47 C.F.R. § 64.1200(a)(2)(iv). In this report, the FCC then addressed debt collection calls and declared that "all debt collection circumstances involve a prior or existing business relationship." 7 FCC Rcd. 8752, 8771–8772. The report continued, "an express exemption from the TCPA's prohibitions for debt collection calls is unnecessary because such calls are adequately covered by exemptions we are adopting here for commercial calls which do not transmit an unsolicited advertisement and for established business relationships." *Id.* at 8773.

The FCC reiterated its position on debt collection in a Memorandum and Order issued on August 7, 1995, and again stated that such calls fall under either the exemption for established business relationships or the exemption for commercial calls that do not adversely affect privacy interests and do not transmit an unsolicited advertisement. 10 FCC Rcd. 12,391, 12,400 (1995).

Defendants rely on the FCC's commentary and regulations to assert that all debt collection calls, including those erroneously made to non-debtors, are exempt from TCPA. The Court disagrees with Defendants' interpretation.

The Court notes that the FCC has not directly addressed the issue of erroneous debt collection calls.[2] In promulgating these regulations, the FCC proceeded from the premise that "all debt collection calls involve a prior or existing business relationship." 7 FCC Rcd. 8752. Since an erroneously called non-debtor has no such existing business relationship, it follows that the purview of the FCC's exemption does not extend to the type of calls made in this case.

■ Because the calls at issue in this case do not fall into the first exemption for existing business relationships, the Court must determine whether these calls are covered by the exemption for commercial calls that do not adversely affect privacy rights and do not transmit an unsolicited advertisement. Since it is clear that no advertisement was transmitted, the relevant inquiry is whether privacy rights are adversely affected. In addressing this question, Defendants contend that the FCC already declared that debt collection calls do not produce such an effect. In so asserting, Defendants overlook the fact that the FCC made this pronouncement under the assumption that debt collection calls would be made only to debtors (i.e. those with an established business relationship). *See* 7 FCC Rcd. 8752. Because the facts of this case belie that assumption, the FCC's pronouncement does not address the privacy rights implicated here. The fact is, by virtue of staying out of debt, a non-debtor has vastly greater privacy rights than someone who has fallen into debt. While the FCC has declared that a debtor's privacy rights are not adversely affected when he receives debt col-

---

**2.** While the Court notes that the Plaintiff has filed a petition with the FCC seeking clarification of rules related to calls to non-debtors, it is unnecessary (as requested by the Plaintiff) for the Court to hold disposition of this motion in abeyance until the FCC has acted on the petition.

lection calls, the Court is convinced that a non-debtor's rights are in fact violated when he is subjected to repeated annoying and abusive debt collection calls that he remains powerless to stop.

■ In its Reply to the Plaintiff's Opposition, Defendants argue that Count Three should be dismissed because Congress enacted the TCPA only to regulate telemarketing calls and facsimiles. While it is apparent that the statute was primarily intended to address abusive telemarketing practices, the Court cannot conclude that the TCPA excludes regulation of other types of calls that utilize artificial or prerecorded messages. This determination is predicated on the plain language of the statute.

The TCPA allows the FCC to exempt calls made for commercial purposes where the FCC determines that the call (I) will not adversely affect the privacy rights intended to be protected by the TCPA and (II) does not include the transmission of any unsolicited advertisement. 47 U.S.C. § 227(b)(2)(B). If Congress intended the statute to only address telemarketing calls, it would have been unnecessary to include the first clause of the exemption requiring the FCC to determine whether privacy interests would be adversely affected. If that were Congress' intent, the exemption would have simply protected calls that do not include unsolicited advertisements (i.e. non-telemarketing calls). Because accepting the Defendants' interpretation would render a portion of the statute superfluous, the Court will decline to do so. *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("[A] statute ought, upon the whole, to be so construed

that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (citations omitted).

Defendants' Motion to Dismiss Count Three is DENIED. Defendants' Motion to Dismiss Count Two is GRANTED

## ORDER ON RECONSIDERATION

AND NOW this 28th day of November 2006, it is hereby ORDERED that Defendants' motion for reconsideration (Doc. No. 21) is DENIED.

■ The complaint asserts multiple causes of actions seeking redress for hundreds of annoying prerecorded or mechanical telephone calls allegedly made by Defendants to Plaintiff in an attempt to recover a debt that Defendants mistakenly believed Plaintiff owed. In its October 3, 2006 Order (Doc. No. 20), this Court granted in part and denied in part Defendants' motion to dismiss the complaint. The Court dismissed Plaintiff's claim under the Federal Communications Act, 47 U.S.C. § 151, *et seq,* and denied Defendants' motion to dismiss the cause of action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Defendants made no motion with respect to Plaintiff's claim alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Thereafter Defendants filed a motion for reconsideration asserting for the first time that the Court lacks subject matter jurisdiction to hear Plaintiff's TCPA claim.[1]

■ In relevant part, the TCPA reads: A person or entity may, if otherwise permitted by the laws or rules of court

---

1. Though Defendants failed to include their subject matter jurisdiction defense in the original motion to dismiss, it is proper for the Court to consider the issue in this motion. The allegation that the Court lacks subject matter jurisdiction is a defense that can never be waived or forfeited. *U.S. v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

of a State, bring in an appropriate court of that State(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. 47 U.S.C. § 227(b)(3)(A-C). In *Erienet, Inc. v. Velocity Net, Inc.* the Court of Appeals for the Third Circuit interpreted this portion of the statute to mean that "Congress intended to authorize private causes of action *only* in state courts and to withhold federal jurisdiction." 156 F.3d 513, 516 (3d Cir.1998) (emphasis in original). Many other appellate courts have concluded similarly. *See e.g. Murphey v. Lanier,* 204 F.3d 911, 915 (9th Cir.2000); *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.,* 106 F.3d 1146, 1152 (4th Cir.1997); *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 510 (5th Cir.1997); *but see Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 451 (7th Cir.2005). Plaintiff argues that *Erienet* only forecloses federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and that both supplemental and diversity jurisdiction are viable under *Erienet* and the facts of this case.[2]

Plaintiff's interpretation of *Erienet* is correct and this Court has supplemental jurisdiction over Plaintiff's TCPA claim. The Court has supplemental jurisdiction over any cause of action that is of the same "case or controversy" as a claim for which the Court has original jurisdiction. 28 U.S.C. § 1367(a); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, ——, 126 S.Ct. 1235, 1240, 163 L.Ed.2d 1097 (2006). The

case or controversy requirement is met and supplemental jurisdiction is established where the claims arise from a "common nucleus of operative fact" and the "plaintiff's claims are such that he would ordinarily be expected to try them in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996); *see also DaimlerChrysler Corp. v. Cuno,* —— U.S. ——, ——, 126 S.Ct. 1854, 1858, 164 L.Ed.2d 589 (2006). To interpret *Erienet* to foreclose supplemental jurisdiction would produce a result that is unsupported by the language and intent of the TCPA, and is inconsistent with the purpose of supplemental jurisdiction. In this case, the Court has original jurisdiction over Plaintiff's FDCPA claim and the facts supporting that cause of action are identical to those supporting the TCPA claim. If the Court dismissed the TCPA claim for lack of jurisdiction, Plaintiff would refile in state court, thus creating parallel actions based on the same facts in two different fora. This would promote a needless waste of resources through duplicative discovery and motion practice, and would create the possibility of conflicting factual findings and legal holdings. *See Klein v. Vision Lab Telecommunications, Inc.,* 399 F.Supp.2d 528, 534 (S.D.N.Y.2005) ("Such an interpretation would also undermine the purposes of supplemental jurisdiction by requiring parties who bring TCPA claims along with other federal claims to maintain separate parallel actions in state and federal court."); *see also Turner v. Crawford Apartments III, L.P.,* 449 F.3d 542, 551 (3d Cir.2006);

This Court's decision is in accord with the views of the Second Circuit Court of Appeals in *Gottlieb v. Carnival Corp.,* 436

---

**2.** It must be noted from the outset that original jurisdiction pursuant to sections 1331 and 1337 were the only types of jurisdiction at issue in *Erienet,* 156 F.3d at 516. The court did not discuss the effects of its holding on supplemental or diversity jurisdiction.

F.3d 335, 343 (2d Cir.2006). After specifically considering whether a federal court could exercise supplemental jurisdiction over a TCPA claim, the Second Circuit concluded that the TCPA did not confer the authority, nor did the court have the inclination, to deny supplemental jurisdiction for TCPA claims. *Id.* Federal courts prior to *Gottlieb* have reached the same conclusion. *See Klein,* 399 F.Supp.2d at 534; *Kinder v. Citibank,* 2000 WL 1409762, at * 3 (S.D.Cal. Sept. 14, 2000) ("Nothing in the Ninth Circuit's analysis suggests that TCPA precludes district courts from hearing private TCPA claims where some other independent basis for jurisdiction exists, such as diversity of citizenship or supplemental jurisdiction.").

Like supplemental jurisdiction, diversity jurisdiction is not addressed in the language of the TCPA or in the Third Circuit's *Erienet* opinion. *See Erienet,* 156 F.3d 513. And as was the case with supplemental jurisdiction, the majority of courts considering the issue have determined that the TCPA does not foreclose a federal district court's exercise of diversity jurisdiction over private claims. *See Gottlieb,* 436 F.3d at 340; *Klein* 399 F.Supp.2d at 534; *Kinder,* 2000 WL 1409762, at *3; *Adler v. Vision Lab Telecommunications, Inc.,* 393 F.Supp.2d 35, 37 (D.D.C.2005); *Kopff v. World Research Group, LLC,* 298 F.Supp.2d 50, 55 (D.D.C.2003); *see also Clean Air Council v. Dragon Intern. Group,* 2006 WL 2136246, at *4 (M.D.Pa. July 28, 2006) (citing *Gottlieb* and finding that the Class Action Fairness Act, 28 U.S.C. 1332(d)(2), provides an independent basis for TCPA jurisdiction). This Court is convinced that diversity of citizenship remains a viable means to establish subject matter jurisdiction over a TCPA claim. To conclude otherwise would create the anomaly in which a plaintiff asserting state law claims for abusive phone practices could bring those claims in federal court based on diversity, while plaintiff's parallel TCPA claim could only be filed in state court. *See Gottlieb,* 436 F.3d at 342. As stated above, such a bifurcation of related cases should be avoided. *See Klein,* 399 F.Supp.2d at 534. Furthermore, diversity jurisdiction was established, at least in part, to ensure a fair trial by protecting non-citizens from local prejudices potentially encountered in state court. *See id.* at 340; *Baltimore Bank for Cooperatives v. Farmers Cheese Co-op.,* 583 F.2d 104, 112 (3d Cir.1978); *Corwin Jeep Sales & Service, Inc. v. American Motors Sales Corp.,* 670 F.Supp. 591, 595 (M.D.Pa.1986). There is nothing to indicate either in fact or in Congress's perception that TCPA claims are uniquely free from these prejudices such that the protections afforded to non-citizens by diversity jurisdiction can or should be abrogated.

■ Diversity jurisdiction is established in an action between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). TCPA § 227(b)(3) entitles Plaintiff to recover at least $500 for each call received from Defendants, and Plaintiff alleges that more than 200 calls were received. Therefore, Plaintiff has met the statutory minimum for diversity jurisdiction notwithstanding actual and statutory damages he may recover for claims brought under FDCPA. Furthermore, complete diversity of citizenship exists because Plaintiff is a citizen of Florida and all Defendants are citizens of other states. Pl.'s Resp. at 11.

In sum, the Court finds that although not pled in the original complaint, the Court has subject matter jurisdiction over Plaintiff's TCPA claims either through supplemental or diversity jurisdiction.[3]

---

**3.** In this motion for reconsideration, Defen-  dants also argue that the Court conducted a

Therefore, Defendants' motion for reconsideration (Doc. No. 21) is DENIED.

flawed legal analysis and erred in denying the original motion to dismiss the TCPA claim. Under Local Rule of Civil Procedure 7.1, however, reconsideration is proper only where there has been an intervening change in controlling law, when new evidence has become available, when there is a need to correct a clear error, or to prevent manifest injustice. Defendants have presented no new evidence or identified any change in controlling law or clear legal error. Defendants ask only that the court "rethink what it had already thought through"—a request which is improper under our Local Rules. *See Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa.1993) (internal quotations omitted).